IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:08-CR-0006-MEF |
| | ) | |
| JEREMY C. MCWHORTER | ) | |

**DEFENDANT'S MEMORANDUM**
**IN SUPPORT OF MOTION TO SUPPRESS**

In response to this Court's Oral Order of April 1, 2008, directing that the defendant present argument as to the evidentiary hearing held on April 1, 2008 on or before April 11, 2008, Mr. McWhorter would offer the following:

The evidence obtained as a result of an unconstitutional search and seizure is due to be suppressed for the following reasons.

When a reasonable person would not feel free to terminate the encounter, he has been "seized," and the Fourth Amendment is implicated. *United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003). Under *Terry*, however, law enforcement officers may, consistent with the Fourth Amendment, "stop and briefly detain a person to investigate a reasonable suspicion that he is involved in criminal activity." *United States v. Williams*, 876 F.2d 1521, 1523 (11th Cir. 1989). To constitute a valid *Terry* stop, the officers conducting the stop must "have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000).

Although reasonable suspicion "requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for

1

making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). It "must be more than 'an inchoate and unparticularized suspicion or hunch.'" *Powell*, 222 F.3d at 917 (*quoting Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

Officer Kestle testified that a Ms. Stinson informed him that Mr. McWhorter was one of several individuals she said were involved in shooting into occupied dwellings the day before. (T-7-9-12).[1] She also stated that Mr. McWhorter had been known in the past to carry several assault rifles in his car. (T-9-13-14). Officer Kestle said that she did not inform him how she knew that. (T-9-15-16).

Officer Kestle had arrived at Ms. Stinson's residence because she had contacted the Montgomery Police Department to report a disturbance which allegedly involving herself and Mr. McWhorter. (T-6-10-14). As Officer Kestle was interviewing Ms. Stinson, she saw a blue Oldsmobile 88 travelling west on Moorcroft Drive and told Officer Kestle the driver was Mr. McWhorter. (T-9-21-23). Officer Kestle jumped back into his patrol car (T-10-25) and followed the car to the intersection of Strathmore Drive and Medford Lane where the officer conducted a traffic stop. (T-11-1-6).

During cross-examination, Officer Kestle admitted that Ms. Stinson had not told him that Mr. McWhorter was one of the individuals she saw shooting into the building the previous day. (T-24-20-21). The officer also admitted that he did not begin questioning Mr. McWhorter about the alleged disturbance that was the reason for the stop until several minutes had passed. (T-25-7-8, 22-25). In fact, it would appear from the officer's testimony that this questioning occurred during

---

[1] The letter "T" refers to the April 1, 2008, Suppression Hearing Transcript, the first number refers to the page within the transcript, and the following number(s) reflect the lines referenced in that transcript.

Officer Green's search of Mr. McWhorter's vehicle. (T-26-1-3). At the time of the vehicle search, and the alleged questioning of Mr. McWhorter, both Mr. McWhorter and his passenger were standing at the rear of Mr. McWhorter's vehicle. (T-25-25).

When Officer Green conducted his search of the interior of Mr. McWhorter's vehicle, both Mr. McWhorter and the passenger had been "pulled" from the car, (T-36-11), and were standing at the rear of the vehicle. (T-25-25). Officer Kestle stated that he had removed both people from the car, frisked them individually for weapons, and directed them to stand by the trunk of Mr. McWhorter's car. (T-12-6-12). A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. *Warden v. Hayden*, 387 U.S. 294, 310 (1967) (MR. JUSTICE FORTAS, concurring). It must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a "full" search, even though it remains a serious intrusion. *Terry*, 392 U.S. at 25.

Even though Ms. Stinson had alleged that Mr. McWhorter was known to have assault weapons in his vehicle, because both Mr. McWhorter and his passenger were standing at the rear of Mr. McWhorter's car, there was no risk to either of the officers because Officer Kestle had already performed a "pat down" search of both Mr. McWhorter and his passenger and determined that neither was armed. (T-12-4-12).

Although officers "may take reasonable action, based upon the circumstances, to protect themselves during investigative detentions," *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989), once an officer has legitimately stopped an individual, the officer can frisk the individual, so long as "a reasonably prudent man in the circumstances would be warranted in the belief that his

3

safety or that of others was in danger." *Terry*, 392 U.S. at 27. The purpose of the stop was "to make contact with" Mr. McWhorter, "to just speak with him and get his side of the story, first of all, and figure out whether there was anything to what Ms. Katorie Stinson was saying." (T-11-13-17).

Officer Kestle testified that by the time Officer Green had arrived he had removed both Mr. McWhorter and the passenger from Mr. McWhorter's vehicle, had performed a "pat down" search of both, and had both individuals standing at the rear of Mr. McWhorter's vehicle. (T-12-4-12). Therefore there was absolutely no reason to conduct a "wingspan" search of the vehicle when neither individual was in the vehicle. Officer Kestle had taken all actions necessary to protect himself and others while he got Mr. McWhorter's "side of the story." (T-11-17). The actions of the officers were unreasonable based upon these circumstances, and exceeded the bounds allowed in a *Terry* stop. This especially apparent because Officer Kestle testified that he neglected to begin his questioning of Mr. McWhorter about what Ms. Stinson had said until several minutes had passed. (T-25-25).

The difference between an investigatory stop of limited duration and a detention that amounts to an arrest "is one of extent, with the line of demarcation resulting from the weighing of a limited violation of individual privacy involved against the opposing interests in crime prevention and detection and in the police officer's safety." *United States v. Acosta*, 363 F.3d 1141, 1145-46 (11th Cir. 2004) (*quotation omitted*). The officers acted contrary to each of the factors this Circuit looks to in determining if an investigatory stop has been transformed into an arrest. To make a determination of whether an arrest has occurred, this Circuit looks to: [1] "the law enforcement purposes served by the detention, [2] the diligence with which the police pursue the investigation, [3] the scope and intrusiveness of the detention, and [4] the duration of the detention." *Id.* at 1146 (quotation omitted). Although there was a law enforcement purpose served at the beginning of the

stop, that is, investigating the allegations of the domestic disturbance, this factor is overwhelmed by the fact that the officers were not diligent in pursuing the investigation of the domestic disturbance, because they delayed "several minutes" before beginning the investigatory questioning, the fact that the wingspan search exceeded the scope and intrusiveness necessary to inquire into the domestic disturbance allegations, and the fact that the duration of the detention lasted for "several minutes" before the investigation began. Officer Kestle's delay of several minutes before beginning his questions concerning the disturbance transformed this *Terry* stop into an arrest, an arrest without probable cause.

This arrest occurred before Officer Green searched the red backpack. *See United States v. Clark*, 337 F.3d 1282 (11th Cir. 2003) (holding that a police officer may briefly detain an individual to protect the officer's safety while he conducts an investigation of reasonably suspicious violent conduct that occurred in his presence). In this case, no violent conduct had occurred in Officer Kestle's presence, and in fact, there had not even been a traffic violation when the officer stopped Mr. McWhorter's car. (T-11-7-8). The limits of an investigatory stop were quickly overwhelmed by the officer's actions and this became an arrest and not simply a *Terry* stop.

The Supreme Court stressed in *Michigan v. Long* that the decision in *Long* does not mean that the police may conduct automobile searches whenever they conduct an investigative stop, although the "bright line" that the Court drew in *Belton* clearly authorizes such a search whenever officers effect a custodial arrest. 463 U.S. 1032, 1050 (1983). However, here there was no custodial arrest. Officer Kestle only stopped Mr. McWhorter to "make contact with the subject." (T-11-13). There was not even a traffic violation involved in this stop. (T-11-7-8). In addition, Officer Kestle testified that when he approached the car, he could not smell the odor of marijauna. (T-Although in

*Long*, the Supreme Court noted that an additional interest exists in the arrest context, that is, preservation of evidence, and that this additional interest justifies an "automatic" search, there was no arrest at the initial stop. Of critical importance to this case, is the Supreme Court's statement that the additional interest does not exist in the *Terry* context. *Long*, 463 U.S. at 1050.

A *Terry* search, the Court said, was "unlike a search without a warrant incident to a lawful arrest," and "is not justified by any need to prevent the disappearance or destruction of evidence of crime. . . . The sole justification of the search . . . is the protection of the police officer and others nearby . . . ." *Terry,* 392 U.S. at 29. The Supreme Court borrowed from *Chimel v. California*, 395 U.S. 752 (1969), and *Belton* for the decision in *Long* that recognizes that part of the reason to allow area searches incident to an arrest was that the arrestee, who may not himself be armed, may be able to gain access to weapons to injure officers or others nearby, or otherwise to hinder legitimate police activity. Although this recognition is applicable in a *Terry* context, but, because the interest in collecting and preserving evidence is not present in a *Terry* context, the Supreme Court said that they require that officers who conduct area searches during investigative detentions must do so only when they have the level of suspicion identified in *Terry*. *Long*, 463 U.S. at 1050. As the officers testified, both Mr. McWhorter and his passenger has been searched, they were standing at the rear of Mr. McWhorter's vehicle, and could not readily access the passenger compartment. Because of these facts, even a "reasonably prudent man in the circumstances" would not "be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27. Before even beginning questioning Mr. McWhorter about the original reason for the stop, the officers conducted an area search without the level of suspicion identified in *Terry*, and thus trespassed upon Mr. McWhorter's constitutional rights.

Clearly, a police officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Although reasonable suspicion is a less demanding standard than probable cause, it does require "at least a minimal level of objective justification for making the stop."*Id.* To decide whether reasonable suspicion exists, the Supreme Court has stated that "the facts available to the officer at the moment of the seizure or the search [must] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Officer Green began his wingspan search before Mr. McWhorter was questioned about the incident which prompted the stop. At that point in time, neither officer had any facts available which indicated that a search of the interior of the car was appropriate. *Id.*

The facts of this case are clearly distinguishable from those underlying the Supreme Court's approval of the officer's actions in *Long*. There, the Supreme Court found that an area search of the passenger compartment of a suspect's car during an investigative detention is reasonable where the suspect was driving at excessive speed and swerved into a ditch, where the suspect appeared to be under the influence of some intoxicant, where the officers frisked the suspect after they observed a large knife in the interior of the car into which the suspect was about to re-enter, where the search of the car was restricted to those areas to which the suspect would generally have immediate control and that could contain a weapon, where the officers had a reasonable belief that the suspect posed a danger if he were permitted to re-enter his vehicle, and where they possessed an articulable and objectively reasonable belief that the suspect was potentially dangerous. *Long*, 463 U.S. at 1032.

In Mr. McWhorter's case, Officer Kestle testified that he pulled Mr. McWhorter over "to get

his side of the story," (T-11-15, 25-3), a traffic violation was not involved in reason for the stop, (T-25-4-5), Mr. McWhorter identified himself and provided identification, (T-11-22-25), both Mr. McWhorter and his passenger were frisked and no weapons were found, (T-12-7-9), and both Mr. McWhorter and the passenger were standing at the rear of Mr. McWhorter's car. (T-12-11).

Mr. McWhorter was not observed committing a traffic violation while Long was, Mr. McWhorter was not under the influence of some intoxicant as Long was, Mr. McWhorter did not attempt to re-enter his vehicle as Long did, Mr. McWhorter did not run his car into a ditch as Long did, a weapon was not visible in Mr. McWhorter's car as it was in Long's, and finally, had the officers released Mr. McWhorter, he could have driven away, while Long could not.

Therefore, because there was no reasonable suspicion that their safety was in jeopardy the officers unconstitutionally exceeded the bounds of *Long* since the information available to them at the time Officer Green conducted the wingspan search did not rise to the level identified by the Supreme Court as necessary for such a search. *Long*, 463 U.S. at 1050. Because of this, the subsequent discovery of the alleged seeds and particles of marijuana as well as the items discovered through the drug dog search must be suppressed as "fruit of the poisonous tree." *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

Mr. McWhorter also asserts that the inconsistencies between the testimony of the two officers as to what occurred during the course of the stop rise to the level that this Court should not find the testimony credible as to the circumstances surrounding the discovery of the alleged marijuana in the red backpack, and therefore grant Mr. McWhorter's motion.

First, Officer Kestle testified that he could not smell marijuana when he approached the car,

(T-12-22), and did not testify that he could smell marijuana when he performed the frisks of Mr. McWhorter and his passenger inside the door of the car. (T-12-7-8). Officer Green contradicts Officer Kestle and testified that he removed the passenger from the car and frisked him. (T-40-10-11). Officer Green also testified that he did not smell marijuana until he was in the car doing the wingspan search. (T-42-22). Officer Kestle also testified that Officer Green came over and told him that he could smell a strong smell of marijuana in the vehicle (T-13-12). Officer Green testified that he came over to Officer Kestle after he searched the red backpack. (T-43-12-14). Officer Green also testified that he did not remember if Officer Kestle had asked Mr. McWhorter if they could conduct a wingspan search. (T-48-18). Officer Kestle stated that he could not smell the marijuana until he put his head into the back seat of the car. (T-14-7-8). Shortly thereafter, Officer Kestle testifed that Officer Green touched his nose to signify to Officer Kestle that he smelled something as he approached the car to do the wingspan search. (T-14-17). Officer Green informed the Court that he did not touch his nose to indicate that he smelled something coming from the car. (T-56-5-7). Officer Kestle also stated that the reason for locking Mr. McWhorter into the rear of one of the patrol cars was to protect him from the drug dog, because the "dogs aren't very nice." (T-27-6). Officer Green testified that the only reason that he stood where he was during the walk around by the drug dog was to keep an eye on Mr. McWhorter and the passenger who had been locked in the rear compartments of the patrol cars. (T-51-3-4). Officer Kestle also stated that both he and Officer Green had to stay away from the drug dog. (T-27-8). Officer Green had no concerns about the drug dog. (T-51-5-7). Officer Kestle also testified that Officer Green removed the red backpack from the rear seat of the automobile and placed it on the grass near the rear passenger's door of Mr. McWhorter's car. (T-28-6-8). Officer Green testified that the red backpack remained on the backseat

9

of the vehicle until the drug dog officer moved it to the trunk of Mr. McWhorter's car. (T-51-11-13).

Due to the inconsistencies in the two responding officer's testimonies, Mr. McWhorter asserts that neither officer's testimony is credible and therefore any evidence found during and subsequent to the unconstitutional wingspan search must be suppressed.

Any and all evidentiary items obtained as a result of the unlawful search of the Oldsmobile 88 bearing Alabama license plate 59581AN and any resulting seizures are "fruit of the poisonous tree" and are due to be suppressed as well. *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

Dated this 11th day of April 2008.

Respectfully submitted,

s/ Michael J. Petersen
MICHAEL J. PETERSEN
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: michael_petersen@fd.org
ASB-5072-E48M

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:08-CR-0006-MEF |
| | ) | |
| JEREMY C. MCWHORTER | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Matthew Shepherd, Esq., Assistant U.S. Attorney, 131 Clayton Street, Montgomery, AL 36101.

Respectfully submitted,

s/ Michael J. Petersen
MICHAEL J. PETERSEN
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: michael_petersen@fd.org
ASB-5072-E48M