IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA          )
                                  )
          v.                      )          CR. NO. 02:08CR0006-MEF
                                  )
JEREMY C. MCWHORTER               )

<u>GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO
SUPPRESS</u>

Comes now the United States of America, by and through Leura G. Canary, United States

Attorney for the Middle District of Alabama, and hereby requests that this Honorable Court deny

Defendant's Motion to Suppress.  As requested by the Court, the United States submits this

memorandum as its argument following the evidentiary hearing held in this matter on April 1, 2008.

The testimony and evidence presented at the hearing on April 1, 2008, shows that

Montgomery Police Department Officers A.R. Kestle and Michael D. Green lawfully searched the

trunk of defendant Jeremy McWhorter's vehicle on May 2, 2007, and that any evidence found in the

trunk is admissible.

**1.  Officer Kestle had reasonable suspicion to permit an investigatory traffic stop of the
defendant's vehicle.**

The testimony of Officer Kestle clearly established that Officer Kestle had reasonable

suspicion to conduct an investigatory traffic stop of the vehicle driven by the defendant on May 2,

2007, pursuant to <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), which permits investigatory stops of vehicles

as well as of pedestrians to investigate possible criminal activity.  See <u>United States v. Williams</u>, 876

F.3d 1521, 1524 (11th Cir. 1989).  "While 'reasonable suspicion' is a less demanding standard than

probable cause and requires a showing considerably less than preponderance of the evidence, the

Fourth Amendment requires at least a minimal level of objective justification for making the stop."

Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (citing United States v. Sokolow, 490 U.S. 1, 7, 109

S.Ct. 1581, 104 L.Ed.2d 1 (1989)). The court must consider the "totality of the circumstances" and

not look at facts in isolation from each other. United States v. Arvizu, 534 U.S. 266, 274 (2002).

Officer Kestle's testimony established that he responded to a call of a domestic disturbance

on Moorcroft Drive in Montgomery at approximately 1700 on May 2, 2007. There he spoke to

Katorie Stinson. (Evid. Hrg. Tr. 6) Stinson reported to Officer Kestle that Jeremy McWhorter had

threatened to shoot and kill her. (Evid. Hrg. Tr. 6-7) Stinson reported that this threat was related to

an argument they had regarding a shooting the previous day on May 1, 2007.(Evid. Hrg. Tr. 7)

Stinson said that McWhorter had been involved with others in shooting into occupied dwellings the

day before, on May 1, 2007. Stinson further told Officer Kestle that McWhorter had been known

in the past to carry assault rifles in his car. She described McWhorter and his vehicle. While Officer

Kestle was talking to Stinson, she identified a vehicle driving by as McWhorter's. (Evid. Hrg. Tr.

9) Officer Kestle testified that he then responded by following the vehicle and conducting a traffic

stop to investigate Stinson's report. The vehicle Officer Kestle stopped was a blue Oldsmobile 88,

as described by Stinson. (Evid. Hrg. Tr. 10)

The information provided by Stinson to Officer Kestle gave him sufficient reasonable

suspicion to conduct a traffic stop to investigate the allegations that McWhorter was involved in

shootings into occupied dwellings and in making an unlawful threat against Stinson. This

information, corroborated by a matching vehicle description, provided Officer Kestle with at least

a "minimal objective justification for making the stop." Wardlow, 528 U.S. at 124. See United

States v. Heard, 367 F.3d 1275, 1280 (11th Cir. 2004) (an anonymous, face-to-face tip to police

officer is sufficient to provide reasonable suspicion to conduct a <u>Terry</u> stop when there are indicia

of reliability)

**2. The police were permitted to conduct a protective search of the passenger compartment of the defendant's vehicle.**

Once Officer Kestle lawfully conducted an investigatory traffic stop of the defendant's

vehicle, he was then permitted to take reasonable steps to ensure his safety.  The actions he testified

to were all reasonable actions as part of an investigatory traffic stop and did not transform the stop

into an arrest.  Officer Kestle testified that he contacted another patrol unit to assist him with the

traffic stop, which arrived within about five minutes of the start of the stop.  (<u>Evid. Hrg. Tr.</u> 12)

Officer Kestle's first step was to obtain the identification of the driver.  He learned that the driver

was Jeremy McWhorter, and observed that he physically matched the description given to him by

Stinson.  Officer Kestle and the other officer, Officer Green, then removed each occupant from the

vehicle and conducted a pat-down search of each.  In addition to the driver, McWhorter, there was

one passenger in the front passenger seat.  After the pat-down search, both occupants were taken to

the rear of the vehicle. (<u>Evid. Hrg. Tr.</u> 12)  While Officer Kestle watched (<u>Evid. Hrg. Tr.</u> 13)  them,

Officer Green conducted a wingspan search of the passenger compartment of the vehicle.[1]  This

wingspan search was a lawful search for two reasons.

---

[1]The defendant argues that the occupants of the vehicle were under arrest at this time. However, the testimony revealed only that they were removed from the vehicle, patted down and then told to stand at the rear of the vehicle while Officer Kestle spoke to them and Officer Green conducted a wingspan search. (<u>Evid. Hrg. Tr.</u> 13) Whether an investigatory stop becomes an arrest depends on the totality of the circumstances.  An investigatory stop does not become an arrest simply because the person is detained, is not free to leave, or is handcuffed.  <u>See</u> <u>United States v. Blackman</u>, 66 F.3d 1572, 1576 (11th Cir. 1995). At the time of the wingspan search the occupants were not handcuffed and the police actions were all related to ensuring their safety.

First, Officer Kestle obtained the consent of the defendant to conduct the wingspan search of the interior of the car. Officer Kestle testified that he asked for and obtained consent from the defendant to conduct a wingspan search. (Evid. Hrg. Tr. 13, 36) Although Officer Kestle testified that McWhorter later denied consent to search the trunk of the vehicle, (Evid. Hrg. Tr. 15) he testified that he did give consent to conduct the wingspan search[2] of the interior of the vehicle. This consent authorized the police officers to enter the interior of the vehicle to conduct the wingspan search.

Second, the circumstances of the traffic stop gave Officer Kestle a reasonable basis for being concerned about his safety during the traffic stop which justified a protective sweep of the vehicle to ensure there were no weapons in the vehicle. During a Terry stop of a vehicle, police may extend the principle of the protective pat-down of the person to a protective search of the passenger compartment when the police have a reasonable belief that the suspect is dangerous. Michigan v. Long, 463 U.S. 1032, 1049 (1983). This search may extend to all areas of the passenger compartment in which a weapon may be hidden. Id.[3] Further, the police may conduct this protective sweep even if the passengers are already out of the vehicle in police control. Id. at 1051-1052. See also United States v. Holmes, 376 F.3d 270, 279-280 (4th Cir. 2004). Any contraband found during a protective search may lawfully be seized. Michigan v. Long, 463 U.S. at 1050.

---

[2]Officer Kestle and Officer Green testified that a wingspan search was essentially a search of the passenger compartment area within the immediate reach of where the occupants would be sitting.(Evid. Hrg. Tr. 14, 41)

[3]Officer Green and Officer Kestle both testified that the pockets in the red backpack found on the back seat were large enough to hold a small firearm. (Evid. Hrg. Tr. 35,45)

The information provided to Officer Kestle that the defendant had been involved in shootings the day before, that he had threatened to kill Stinson, and that he was known to carry assault rifles in his vehicle gave Officer Kestle a reasonable basis for believing that the defendant posed a potential danger to him, authorizing the search. Officer Kestle testified that the information from Stinson added to his concern when making the traffic stop and that safety was his first concern. (Evid. Hrg. Tr. 34) He also testified the purpose of the search was for weapons or contraband. (Evid. Hrg. Tr. 14) The specific facts of Michigan v. Long are clearly different, as the Defendant noted in his memorandum, however, the principle as applied to this case is the same. The issue is whether the officer has a reasonable basis for believing that the suspect is dangerous, and in this case the facts Officer Kestle testified to provided that basis. See Id. at 1049.

When conducting the search, Officer Green testified that he searched the passenger compartment of the vehicle and the area within the immediate reach of the passenger and the driver.(Evid. Hrg. Tr. 41)  This area included where a red backpack was found on the back seat behind the driver's seat, within arms reach of the driver. (Evid. Hrg. Tr. 31, 41-42)

**3.  While performing the lawful protective search of the vehicle, Officer Green discovered evidence which provided probable cause to search the vehicle.**

Law enforcement may search a motor vehicle without a warrant if there is probable cause to believe that the vehicle contains evidence of a crime and the vehicle is mobile, even if exigent circumstances do not exist. See Maryland v. Dyson, 527 U.S. 465, 466-467 (1999); United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2005). "Probable cause for a search exists when under the totality of the circumstances there is a fair probability that contraband or evidence of crime will be found in a particular place." United States v. Magluta, 418 F.3d 1166, 1182 (11th Cir. 2005)

5

While conducting the lawful protective sweep, officers developed probable cause to search the whole vehicle, including the trunk. First, Officer Green testified that he smelled an odor of marijuana inside the vehicle as soon as he entered the vehicle to conduct the search.[4] (Evid. Hrg. Tr. 42, 52) He then testified he found marijuana seeds in a red backpack which was sitting on the back seat, behind the driver's seat, within arms reach of the driver or passenger. (Evid. Hrg. Tr. 31, 41-42) The pocket where the red backpack was found was large enough to hold a gun according to Officer Kestle and Officer Green. (Evid. Hrg. Tr. 35, 45) Inside the backpack with the marijuana seeds were also plastic baggies and two-way radios, which Officer Green testified are items commonly used in the drug trade. (Evid. Hrg. Tr. 45)

Evidence that an officer has smelled an odor of marijuana coming from or in a vehicle is sufficient to establish probable cause to search the entire vehicle, including the trunk and any containers in it, for illegal drugs. See United States v. Johns, 469 U.S. 478, 482 (1985) ("After the officers came closer and detected the distinct odor of marijuana, they had probable cause to believe that the vehicle contained contraband."); United States v. Lueck, 678 F.2d 895, 903 (11th Cir. 1982); United States v. Ross, 456 U.S. 798, 825 (1982)(when probable cause exists to search vehicle, officers may search entire vehicle including trunk or other compartments); United States v. Mathis,

---

[4]The defendant makes much of the fact that Officer Kestle testified that Officer Green touched his nose to indicate he smelled marijuana, (Evid. Hrg. Tr. 14), but Officer Green stated he did not actually touch his nose to indicate he smelled marijuana.(Evid. Hrg. Tr. 56) However, Officer Green did state that he told Officer Kestle that smelled marijuana after completing the wingspan search. (Evid. Hrg. Tr. 53) Therefore, the inconsistency about whether Officer Green touched his nose is of little importance. This could have easily been a misunderstanding. Officer Green could have inadvertently touched or scratched his nose without realizing that Officer Kestle believed it to be a signal. The testimony that is consistent is that Officer Green stated he smelled marijuana (Evid. Hrg. Tr. 42, 52) and Officer Kestle also stated he then smelled marijuana. (Evid. Hrg. Tr. 13)

239 Fed.Appx. 513, 515 (11th Cir. 2007).   In this case, Officer Green smelled the marijuana as soon as he entered the vehicle to conduct the lawful protective search. (Evid. Hrg. Tr. 41)   At that moment, the police then had probable cause to search the entire vehicle , including the trunk.   The discovery of the red backpack with marijuana seeds and items associated with the drug trade only added to the probable cause.   As a result, the police were permitted to then search the rest of the vehicle including the trunk.

**4.  The alert of a drug sniffing canine provide additional probable cause to search the vehicle.**

Even though the smell of marijuana and the discovery of the items in the red backpack provided sufficient probable cause to search the vehicle's trunk, the officers developed additional probable cause when a drug sniffing canine conducted a free air sniff around the vehicle and alerted to the presence of illegal narcotics.   The alert of a drug sniffing canine when sniffing a vehicle is sufficient for probable cause to search the vehicle. United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997); United States v. Porter, 221 Fed.Appx. 836, 840 (11th Cir. 2007).  The use of a drug detecting dog to sniff the exterior of a vehicle during a traffic stop is also not a search that implicates the Fourth Amendment.  See Illinois v. Calles, 543 U.S. 405, 409 (2005); United States v. Glinton, 154 U.S. F.3d 1245, 1257 (11th Cir. 1998); United States v. Holloman, 113 F.3d at 194.   Both Officer Green and Officer Kestle testified that a drug sniffing dog arrived on the scene, sniffed around the outside of the vehicle and then alerted on the vehicle. (Evid. Hrg. Tr. 23, 46-47)  Officer Kestle testified the dog arrived approximately 30-45 minutes into the traffic stop and then conducted the sniff within four or five minutes. (Evid. Hrg. Tr. 23)  This is not an unreasonable time for a traffic stop such as this one when there was testimony that the officer with the canine had to travel from the other side of town.  See United States v. Hardy, 855 F.2d 753, 761 (11th Cir. 1988)

(investigatory traffic stop involving the use of a drug dog that lasted 50 minutes not unreasonably long)

**5. Conclusion**

On May 2, 2007, Officer Kestle had an objectively reasonable suspicion of criminal activity being committed by the defendant that permitted him to conduct a traffic stop of the defendant's vehicle. Once he stopped the vehicle, officers were then permitted to perform a protective sweep of the interior of the passenger compartment because the defendant consented and because they had a reasonable basis for being concerned about their safety. While performing this lawful protective search, Officer Green smelled marijuana, found marijuana seeds, and found items used in the drug distribution business. This then gave the officers probable cause to search the vehicle without a warrant, including the trunk where the assault rifles and marijuana were located. Finally, additional probable cause was provided by the alert for illegal drugs by the drug sniffing canine. As a result, the defendant's motion to suppress should be denied and the evidence found in the trunk of the defendant's vehicle is admissible.

WHEREFORE, for the reasons described above, the United States respectfully requests that the Defendant's Motion to Suppress be DENIED.

Respectfully submitted this 16th day of April, 2008.

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Matthew W. Shepherd
MATTHEW W. SHEPHERD
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
(334) 223-7280
(334) 223-7135 Fax
matthew.shepherd@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA      )
                              )
        v.                 )     CR. NO. 02:08CR0006-MEF
                              )
JEREMY C. MCWHORTER      )

CERTIFICATE OF SERVICE

       I hereby certify that on April 16, 2008, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to Michael

Petersen, Esq., attorney for the defendant Jeremy C. McWhorter.

                    Respectfully submitted,

                    LEURA G. CANARY
                    UNITED STATES ATTORNEY

                    /s/ Matthew W. Shepherd
                    MATTHEW W. SHEPHERD
                    Assistant United States Attorney
                    131 Clayton Street
                    Montgomery, Alabama 36104
                    (334) 223-7280
                    (334) 223-7135 Fax
                    matthew.shepherd@usdoj.gov