IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | Case No. 2:08-cr-06-MEF |
| | ) | [wo] |
| JEREMY C. McWHORTER | ) | |

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This cause is before the Court on a *Motion to Suppress* filed by Defendant Jeremy C. McWhorter ("Defendant" or "McWhorter") and the United States' *Response to Defendant's Motion to Suppress*. *See* Doc. 12, "Motion to Suppress"; Doc. 16, "Response." McWhorter challenges evidence seized by officers who conducted a warrantless search of his car on May 2, 2007. An evidentiary hearing was conducted on April 1, 2008. The parties filed supplemental briefs to be considered by the Court. *See* Doc. 23, "Memorandum in Support of Motion to Suppress;" Doc. 24, "Memorandum in Opposition of Motion to Suppress." After the evidentiary hearing and due consideration of briefs, arguments, and applicable law, the Magistrate Judge concludes the warrantless search passes Constitutional muster and recommends that the District Court **DENY** the motion to suppress.

### I.   FACTUAL BACKGROUND AND MOTION TO SUPPRESS

On May 2, 2007, at approximately 5:00 p.m., Officer A.R. Kestle ("Officer Kestle") of the Montgomery, Alabama Police Department responded to a call reporting a disturbance at 3005 Moorecroft Drive. *See* Doc. 22, Transcript of Suppression Hearing ("Tr.") at 6 lines

6-11, 16-17; Tr. 10 lines 21-22. Officer Kestle testified Katorie Stinson ("Stinson") reported that McWhorter threatened to shoot her because she was aware McWhorter had some involvement in a shooting the day before. Tr. 6 line 21 - Tr. 7 line 1. She described McWhorter's physical appearance and that he drove a blue Oldsmobile 88. Tr. 7 lines 16-19. Stinson also stated McWhorter likely had several assault rifles in the car. Tr. 9 lines 12-14. Officer Kestle then testified Stinson pointed to McWhorter driving by in a blue Oldsmobile 88. Tr. 9 lines 21-23.

Officer Kestle then followed McWhorter to the intersection of Medford and Strathmore and initiated a traffic stop. Tr. 24 lines 24-25; Doc. 12 at 1. Officer Kestle testified McWhorter had not committed any traffic violations, but stopped him to speak with him about the disturbance. Tr. 11 lines 7-17. Upon approaching the vehicle, Officer Kestle requested identification and saw a passenger, Sean Howard ("Howard"), in the car as well. Tr. 11 line 19 - Tr. 12 line 6; *see also* Doc. 16 at 2. Officer Kestle testified he had both McWhorter and Howard step out of the vehicle and did a pat down search. Tr. 12 lines 6-12. Officer Kestle also requested backup and approximately five minutes later Officer M.D. Green ("Officer Green") came to the scene. Tr. 12 lines 14-19; Tr. 31 lines 21-24. McWhorter consented to a wingspan search of the vehicle. Tr. 36 lines 7-14. Officer Green then conducted a wingspan search of the vehicle wherein he noticed the smell of marijuana and found a red backpack containing plastic sandwich bags, two-way radios, and what appeared to be marijuana seeds. Tr. 13 lines 5-16; Tr. 41 line 5 - Tr. 42 line 10. Officer Green called over Officer Kestle and advised him of the marijuana smell and the backpack,

but stated no marijuana was found during the wingspan search. Tr. 13 lines 16-22; Tr. 43 lines 12-14. Moreover, the testimony indicates Officer Kestle could also smell the marijuana odor once he stuck his head inside the back door of the vehicle. Tr. 13 line 24 - Tr. 14 line 8.

When McWhorter refused to consent to a search of the trunk, Officers Kestle and Green called for a K-9 unit. Tr. 14 line 25 - Tr. 15 line 7. Officer K.C. Bentley ("Officer Bentley") responded and said she would be en route; however, she was on the other side of town and she would be there as soon as possible. Tr. 15 lines 9-12. Between twenty and forty-five minutes later Officer Bentley came with the canine to the scene. Tr. 23 lines 8-9; Tr. 26 lines 4-9; Tr. 54 lines 9-14. McWhorter and Howard were placed in the back of separate patrol vehicles upon the arrival of Officer Bentley and the canine. Tr. 15 lines 16-21. The dog hit on the vehicle several times - by the driver's side door and the trunk - so Officer Bentley got the keys from McWhorter and opened the trunk. Tr. 15 line 22 - Tr. 16 line 2; Tr. 46, lines 14-15; Tr. 47, lines 10-14. In the trunk were three assault rifles in plain view and a blue backpack. Tr. 16 lines 3-19; Tr. 47 line 24-Tr. 48 line 4. After opening the trunk, the dog immediately began hitting the blue backpack. Tr. 17, lines 15-20; Tr. 49 lines 2-5. Officer Bentley opened the backpack and inside was approximately 1 to 1 1/4 pounds of marijuana. Tr. 18 lines 6-7. The search also revealed a bag of marijuana inside the vehicle's fuse box. Doc. 16 at 2; Tr. 47 lines 10-16; Tr. 49 lines 6-11. McWhorter and Howard were arrested around 6:00 p.m. *Id*.    McWhorter files his motion to suppress asserting the police lacked probable cause to stop his vehicle and search the vehicle and

backpack. He further asserts the stop went beyond the time period allowed for an investigatory stop and as such, violated the Fourth Amendment's protection against unlawful seizure. McWhorter contends, as a result, the evidence obtained should be suppressed. *See* Doc. 12.

## II.  DISCUSSION AND ANALYSIS

Warrantless searches and seizures are per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (citations omitted). One such exception is the automobile exception wherein officers can search any container within an operational car without a warrant as long as they have probable cause to believe that the container holds evidence of a crime. *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005) (citing *California v. Acevedo*, 500 U.S. 565, 579-80, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991) and *United States v. Watts*, 329 F.3d 1282, 1285 (11th Cir. 2003)). No one disputes the car driven by McWhorter was operational, thus the inquiry is limited to whether there was probable cause to believe there was evidence of a crime. *See Watts*, 329 F.3d at 1286. "Probable cause for a search exists when under the totality of the circumstances 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Goddard*, 312 F.3d 1360, 1363 (11th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

In the case at hand, Officer Kestle had just spoken with Stinson wherein she informed him of a threat against her. Stinson provided a statement that McWhorter had threatened her because she knew he was involved in a shooting from the day before and also provided a

specific description of McWhorter and his vehicle. She further indicated he was carrying assault rifles in the vehicle. In addition, she specifically identified McWhorter and his vehicle when she saw him driving by. Using the totality of the circumstances approach, Stinson's information was credible and Officer Kestle had probable cause to initiate an investigatory stop and search the vehicle.

Even absent probable cause, a brief detention of a vehicle is reasonable within the meaning of the Fourth Amendment where it is conducted "in order to investigate a reasonable suspicion that such persons are involved in criminal activity." *United States v. Mikell*, 102 F.3d 470, 474 (11th Cir. 1996) (*citing Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed. 889 (1968) and *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990)); *accord United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1220 (11th Cir. 1993) (citing *Terry*) To justify this intrusion, the reasonableness standard requires that the office "be able to point to specific and articulable facts, which, when taken together with rational inferences from those facts, reasonably warrant that intrusion." *Mikell*, 102 F.3d at 474-75 (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880); *see also United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000) (officer must have "a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity."). "The officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123-24, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. 1868) (internal quotations omitted); *Powell*, 222 F.3d at 917. Moreover, "[w]hile 'reasonable suspicion' is a less

demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Wardlow*, 528 U.S. at 123, 120 S.Ct. at 675-76 (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)); *accord Diaz-Lizaraza*, 981 F.2d at 1220-21. It may even be based on "commonsense judgment and inferences about human behavior." *Wardlow*, 528 U.S. at 125, 120 S.Ct. at 676; *Powell*, 222 F.3d at 917 (quoting *Wardlow*). Finally, the court must look to the "totality of the circumstances." *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740 (2002).

Based on the information provided by Stinson along with the matching vehicle driving by, Officer Kestle had the minimum level of objective justification to stop the car. Based on the totality of the circumstances including Kestle's judgment, the stop satisfies the requirements under *Terry* and its progeny. Thus, it passes constitutional muster.

Next, the Court turns to the search of the vehicle. The first search at issue is the wingspan search conducted by Officer Green. Once the investigatory stop began, Officer Kestle and Officer Green "may take reasonable action, based upon the circumstances, to protect themselves during investigative detentions." *United States v. Hastamorir*, 881 F.2d 1551, 1556-57 (11th Cir. 1989) (citing *United States v. Kapperman*, 764 F.2d 786, 790 n.4 (11th Cir. 1985)). However, first and foremost, McWhorter consented to the wingspan search. Tr. 36, lines 7-14. As such, no further inquiry into the wingspan search is required as the search was lawful.

During the wingspan search, Officer Green could clearly smell the marijuana odor and discovered marijuana paraphernalia in the red backpack located on the back seat. Tr. 42, lines 8-10, 16-18; *see also* Tr. 13 line 23 - Tr. 14 line 8 (Officer Kestle could also smell marijuana once he put his head inside the vehicle). Specifically, Officer Green found marijuana seeds, sandwich bags, and two-way walkie-talkies. *Id*. lines 8-10. Further, the Court is satisfied Officer Kestle and Officer Green were sufficiently familiar with the odor based upon their previous experience and training to recognize it accurately.

Between the smell and the paraphernalia, the officers developed probable cause to search the entire vehicle even though McWhorter refused consent to search the trunk. *See* Tr. 14 line 24 - Tr. 15 line 4. The smell of narcotics alone may support a finding of probable cause. *United States v. Johns*, 469 U.S. 478, 482, 105 S.Ct. 881, 884, 83 L.Ed.2d 890 (1985) (citation omitted); *accord United States. v. Windrix*, 405 F.3d 1146, 1152 (10th Cir. 2005) ("[T]he scent of methamphetamine, wherever detected, gives qualified officers probable cause to search for methamphetamine and evidence of methamphetamine manufacturing."); *Kleinholz v. United States*, 339 F.3d 674, 677 (8th Cir. 2003) (""The smell of ether might alone support a finding of probable cause."); *United States v. Cephas*, 254 F.3d 488, 495 (4th Cir. 2001) ("The odor of marijuana alone would almost certainly have given officer probable cause to believe that contraband was present in the apartment"); *United States v. Brown*, 250 F.3d 739 (5th Cir. 2001) (unpublished) ("The distinct odor of burnt marijuana, by itself, will provide probable cause to search a vehicle."); *United States v. Littleton*, 15 Fed. Appx. 189, 193 (6th Cir. 2001) (unpublished) (An officer's detection of the odor of marijuana in an

automobile constituted probable cause to believe there was marijuana present). Thus, the officers, simply based on the odor of marijuana, had probable cause. Coupled with the paraphernalia, the conclusion is even stronger. Officer Kestle and Officer Green could have searched the trunk with just that information and passed constitutional muster. However, they took it one step further and called in a drug sniffing canine which simply bolstered the probable cause to search the entire vehicle. Further, the length of the stop was not excessive in this instance especially in light of the fact the officers already had probable cause to search the vehicle. *See United States. v. Hardy*, 855 F.2d 753, 761 (11th Cir. 1988) (50 minute investigatory stop involving the use of a drug dog was no unreasonably long under the circumstances). In this case, the length of time was similar to the *Hardy* case and as with that case, under the circumstances, this Court determines the length was not unreasonable. Thus, the search of the trunk also passes constitutional muster and the evidence should not be suppressed.

### III.  CONCLUSION

Pursuant to the foregoing findings and conclusions, it is the RECOMMENDATION of the Magistrate Judge that Defendant McWhorter's *Motion to Suppress* (Doc. 12) be **DENIED**.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation not later than **May 1, 2008.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The

parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)(*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 18th day of April, 2008.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE