IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:08-CR-0006-MEF |
| | ) | |
| JEREMY C. MCWHORTER | ) | |

**OBJECTIONS TO REPORT AND RECOMMENDATION**

**COMES NOW** the defendant, **JEREMY C. MCWHORTER**, by and through undersigned counsel, Michael J. Petersen, and respectfully submits the following objections to the Magistrate Judge's Recommendations dated April 18, 2008. (Doc. #25). Mr. McWhorter objects to the Magistrate Judge's finding that the stop and search which occurred on May 2, 2007 passes constitutional muster, and to the recommendation that his Motion to Suppress be denied, as discussed in detail individually below.

**SPECIFIC OBJECTIONS**

The Magistrate Judge found that "based on the information provided by Stinson along with the matching vehicle driving by, Officer Kestle had the minimum level of objective justification to stop the car." Using a totality of the circumstances analysis, which included the officer's judgment, the report recommends a finding that the stop satisfies the requirements under *Terry* and its progeny and thus passes constitutional muster. (Doc #25 at 6). *See Terry v. Ohio*, 392 U.S. 1, 21(1968). Mr. McWhorter does not object to the Magistrate's finding that the initial stop of Mr. McWhorter's car was constitutional.

**Permission Was Not Given For The Wingspan Search**

However, Mr. McWhorter objects to the recommendation that the search of the passenger compartment passes constitutional muster. In arriving at this conclusion, the Magistrate Judge cited to *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005) (citing *California v. Acevedo*, 500 U.S. 565, 579-80 (1991) and *United States v. Watts*, 329 F.3d 1282, 1285 (11th Cir. 2003)), to support his assertion the principle that officers can search any container within an operational car without a warrant as long as they have probable cause to believe that the container holds evidence of a crime. Mr. McWhorter agrees that the inquiry was correctly limited to the question of whether there was probable cause to believe there was evidence of a crime. *See Watts*, 329 F.3d at 1286. (Doc #25 at 4).

During the evidentiary hearing, Officer Kestle stated that he stopped Mr. McWhorter "to get his side of the story." (T11-15, 25-3). It is notable that the "story" was the allegation that Mr. McWhorter had threatened Ms. Stinson and nothing more. This is also critical to a determination of whether the officers had probable cause to search the backpack for evidence of a crime. Ms. Stinson reported that Mr. McWhorter allegedly carried assault rifles in his car. (T9-12-14). However, Officer Kestle testified that she did not tell him how she knew this. (T9-15-16). Although *Terry* and its progeny clearly allow for a pat down of a subject, and under certain circumstances, a protective search of the passenger compartment, in this case, although the pat down was proper, the additional wingspan search of the passenger compartment was not.

The Report and Recommendations correctly stated that once an investigatory stop begins, officer(s) "may take reasonable action, based upon the circumstances, to protect themselves during investigative detentions." *United States v. Hastamorir*, 881 F.2d 1551, 1556-57 (11th Cir. 1989)

(citing *United States v. Kapperman*, 764 F.2d 786, 790 n.4 (11th Cir. 1985)). Mr. McWhorter asserts that the wingspan search was not reasonable based upon the circumstances of this case.

Officer Kestle testified that he conducted a pat down of both Mr. McWhorter and his passenger for officer safety. (T12-8). The officer stated that he brought Mr. McWhorter out first, and did the pat down in the area between the open driver's door and the car's body. (T12-8). Officer Kestle stated that, following his pat down of Mr. McWhorter, he had Mr. McWhorter step to the rear of the car, and then he repeated the process for the passenger. (T12-8-12).

Following the pat down, Officer Kestle stood with both Mr. McWhorter and his passenger at the rear of the car. (T13-1). It was at that time, that Officer Kestle says that he asked Mr. McWhorter for permission to do a wingspan search of the interior of the car. (T13-2-3). Neither officer testified that there were assault rifles visible in the passenger compartment, neither individual had a weapon on their person, and there was no constitutionally acceptable reason to do anything other than to commence an inquiry into the allegations that Mr. McWhorter had threatened Ms. Stinson a few minutes earlier.

The "wingspan" search of Mr. McWhorter's car was unreasonable under the circumstances of this case. Ms. Stinson had informed the officer that she believed that Mr. McWhorter had assault rifles in the car. (T9-14). However, an assault weapon, as is clearly seen in Government Exhibit #1, is much larger than the backpack lying on the back seat of Mr. McWhorter's car. (Government Exhibit #3). Based upon the facts available to them, there was no reason for the officers to believe that Mr. McWhorter may have been armed with anything other than assault rifles. According to the Officer Kestle's testimony, Ms. Stinson reported that Mr. McWhorter was known to have assault rifles in his car. She notably did not tell the officer that he was known to be otherwise armed. (T.-

9). Ms. Stinson also notably did not say that she had seen Mr. McWhorter shooting at anything the day before. (T24-20-21). An assault rifle would have been clearly visible to the officers without the need to enter the passenger compartment of the car. Based upon the facts available, the officers did not have probable cause to believe that the red backpack held evidence of a crime. *See Watts*, 329 F.3d at 1286. The alleged crime was that of a domestic argument. Thus, the officers did not have probable cause to conduct a search pursuant to *Watts*.

In *Michigan v. Long*, the Supreme Court held that a search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. 463 U.S. 1032, 1049 (1983). However, in the instant matter the officer did not have the "specific and articulable" facts necessary to draw the "rational inference" that Mr. McWhorter was dangerous and could gain immediate control of the assault rifles he allegedly carried in his car. In this case, there was nothing more than a report by a woman who claimed Mr. McWhorter had threatened her over an incident which occurred the previous day. Officer Kestle testified that Mr. McWhorter could not gain immediate access to the assault weapons in the trunk. (T30-17-19). In addition, Mr. McWhorter had properly identified himself, and he was not reported as a convicted felon. (T32-15-23).

Therefore, based upon the requirement of *Michigan v. Long*, that the officer possess a reasonable belief based on "specific and articulable facts" that "reasonable warrant" the officer to believe that Mr. McWhorter was dangerous, these officer did not have the facts necessary to draw that inference that Mr. McWhorter was dangerous. *Long,* 463 U.S. 1032, 1049 (1983). Thus, the

search was also improper based upon these grounds.

In addition, the Report and Recommendation does not discuss the contradictions and inconsistencies in the officers' testimony at the evidentiary hearing and rushes to the conclusion that the unconstitutional wingspan search was proper based solely upon Officer Kestle's testimony that Mr. McWhorter had given his permission for them to do a wingspan search.

It strains credulity that, while Mr. McWhorter would steadfastly refuse to grant permission to search his car's trunk, he would readily grant permission for a search of the car's interior. (T14-24-25 - T15-1-3). As pointed out in Mr. McWhorter's memorandum, (Doc #24 at 8-10 ), the officers' testimony concerning the events of May 2nd was contradictory or inconsistent with regard to several critical details. And these contradictions and inconsistencies render Officer Kestle's statement that Mr. McWhorter granted permission to conduct a wingspan search unbelievable.

The Report and Recommendation does not make a finding that the officer's testimony was credible, and in fact, it appears that their testimony was so contradictory that the Magistrate Judge himself questioned Officer Green to find out if that officer had touched his nose or otherwise signaled Officer Kestle that he could smell something in the car. (T56-5-8). Officer Kestle had previously asserted that Officer Green had signaled him in that fashion. (T14-17). Officer Green informed the Magistrate Judge that he had not done that. (T56-5-8).

This is not the only inconsistency, the officer's testimony was inconsistent with each other throughout. Officer Kestle testified that he could not smell marijuana when he approached the car, (T12-22), and also testified that he could not smell marijuana when he performed the frisks of Mr. McWhorter and his passenger inside the door of the car. (T12-7-8). However, shortly thereafter, Officer Kestle testified that Officer Green signaled him as he approached the car that he smelled

something inside. (T14-15-19). In fact, Officer Kestle stated later during the hearing that he could not smell the marijuana until he put his head into the back seat of the car. (T14-7-8).

  Officer Green contradicts Officer Kestle and testified that he removed the passenger from the car and frisked him. (T40-10-11). Officer Green also testified that he did not smell marijuana until he was in the car doing the wingspan search. (T42-22). Officer Kestle also testified that Officer Green came over and told him that he could smell a strong smell of marijuana in the vehicle before beginning the search. (T13-12). Officer Green testified that he came over to Officer Kestle after he searched the red backpack. (T43-12-14). Officer Green also testified that he did not remember if Officer Kestle had asked Mr. McWhorter if they could conduct a wingspan search. (T48-18). Officer Kestle testifed that Officer Green touched his nose to signify to Officer Kestle that he smelled something as he approached the car to do the wingspan search. (T14-17). Officer Green informed the Court that he did not touch his nose to indicate that he smelled something coming from the car. (T56-5-7). Officer Kestle also stated that the reason for locking Mr. McWhorter into the rear of one of the patrol cars was to protect him from the drug dog, because the "dogs aren't very nice." (T27-6). Officer Green testified that the only reason that he stood where he was during the walk around by the drug dog was to keep an eye on Mr. McWhorter and the passenger who had been locked in the rear compartments of the patrol cars. (T51-3-4). Officer Kestle also stated that both he and Officer Green had to stay away from the drug dog. (T27-8). Officer Green had no concerns about the drug dog. (T51-5-7). Officer Kestle also testified that Officer Green removed the red backpack from the rear seat of the automobile and placed it on the grass near the rear passenger's door of Mr. McWhorter's car. (T28-6-8). Officer Green testified that the red backpack remained on the backseat of the vehicle until the drug dog officer moved it to the trunk of Mr. McWhorter's car. (T51-11-13).

Although Mr. McWhorter raised these inconsitencies in argument, (Doc #24 - 8-10), and asserted that because of them, their testimony should not be credible, the Report and Recommendation did not address this issue.

Specifically, Mr. McWhorter asserts that due to the inconsistent stories related by the officers concerning the wingspan search, this Court should find that it was not credible that Mr. McWhorter gave permission for the officers to conduct a wingspan search, the permission that Officer Green does not remember being given, when Mr. McWhorter categorically refused to allow a search of the trunk, not once but thre or four times. The Report and Recommendation is incorrect in concluding that based upon consent the wingspan search was proper. (Doc #25 at 6).

## The Wingspan Search Was Improper

The Report and Recommendation should have analyzed the issue of whether the wingspan search was proper under the circumstances of this case. Mr. McWhorter asserts that it was not and that the search did not comport with the law as established by the Supreme Court.

The Supreme Court has made it abundantly clear that a search of a car's passenger compartment must comply with the requirement established in *Long* that the officer must possess a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. 463 U.S. 1032, 1049 (1983). In this case, neither Officer Kestle nor Officer Green could form a reasonable belief based upon the facts at hand and rational inferences from those facts that allowed either of them to conduct the unconstitutional wingspan search of the passenger compartment. Indeed, it would appear from the facts and testimony elicited at the evidentiary hearing and rational inference from those facts that Officer

Kestle was intent upon searching Mr. McWhorter's car regardless of Mr. McWhorter's constitutional right to be free of unreasonable searches and seizures.

The Supreme Court stressed in *Michigan v. Long* that the decision in *Long* does not mean that the police may conduct automobile searches whenever they conduct an investigative stop, although the "bright line" that the Court drew in *Belton* clearly authorizes such a search whenever officers effect a custodial arrest. 463 U.S. 1032, 1050 (1983). However, here there was no custodial arrest. Officer Kestle only stopped Mr. McWhorter to "make contact with the subject." (T-11-13).

There was not even a traffic violation involved in this stop. (T-11-7-8). In addition, Officer Kestle testified that when he approached the car, he could not smell the odor of marijauna. (T12-22). Although in *Long*, the Supreme Court noted that an additional interest exists in the arrest context, that is, preservation of evidence, and that this additional interest justifies an "automatic" search, there was no arrest at the initial stop. Of critical importance to this case, is the Supreme Court's statement that the additional interest does not exist in the *Terry* context. *Long*, 463 U.S. at 1050.

A *Terry* search, the Court said, was "unlike a search without a warrant incident to a lawful arrest," and "is not justified by any need to prevent the disappearance or destruction of evidence of crime. . . . The sole justification of the search . . . is the protection of the police officer and others nearby . . . ." *Terry,* 392 U.S. at 29. The Supreme Court borrowed from *Chimel v. California*, 395 U.S. 752 (1969), and *Belton* for the decision in *Long* that recognizes that part of the reason to allow area searches incident to an arrest was that the arrestee, who may not himself be armed, may be able to gain access to weapons to injure officers or others nearby, or otherwise to hinder legitimate police activity. Although this recognition is applicable in a *Terry* context, but, because the interest in collecting and preserving evidence is not present in a *Terry* context, the Supreme Court said that they

require that officers who conduct area searches during investigative detentions must do so only when they have the level of suspicion identified in *Terry*. *Long*, 463 U.S. at 1050. As the officers testified, both Mr. McWhorter and his passenger has been searched, they were standing at the rear of Mr. McWhorter's vehicle, and could not readily access the passenger compartment. Because of these facts, even a "reasonably prudent man in the circumstances" would not "be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27. Before even beginning questioning Mr. McWhorter about the original reason for the stop, the officers conducted an area search without the level of suspicion identified in *Terry*, and thus trespassed upon Mr. McWhorter's constitutional rights.

Clearly, a police officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Although reasonable suspicion is a less demanding standard than probable cause, it does require "at least a minimal level of objective justification for making the stop."*Id*. To decide whether reasonable suspicion exists, the Supreme Court has stated that "the facts available to the officer at the moment of the seizure or the search [must] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Officer Green began his wingspan search before Mr. McWhorter was questioned about the incident which prompted the stop. At that point in time, neither officer had any facts available which indicated that a search of the interior of the car was appropriate. *Id*. Indeed, the fact that neither Mr. McWhorter or his passenger were armed, neither was in the passenger compartment, the stop was purportedly to question Mr. McWhorter about the complaint by Ms. Stinson, and there were no assault rifles lying in the passenger compartment, all mitigate

against a finding that a wingspan search was approriate. *Id.*

The facts of this case are clearly distinguishable from those underlying the Supreme Court's approval of the officer's actions in *Long*. There, the Supreme Court found that an area search of the passenger compartment of a suspect's car during an investigative detention was reasonable. In *Long*, the defendant was driving at excessive speed, swerved into a ditch, and appeared to be under the influence of some intoxicant. In *Long*, the officers frisked the defendant after they observed a large knife in the interior of the car into which the defendant was about to re-enter, the search of the car was restricted to those areas to which the defendant would generally have immediate control and that could contain a weapon, the officers had a reasonable belief that the defendant posed a danger if he were permitted to re-enter his vehicle, and where they possessed an articulable and objectively reasonable belief that the suspect was potentially dangerous. *Long*, 463 U.S. at 1032.

In Mr. McWhorter's case, Officer Kestle testified that he pulled Mr. McWhorter over "to get his side of the story," (T11-15, T25-3), a traffic violation was not involved in reason for the stop, (T25-4-5), Mr. McWhorter identified himself and provided identification, (T11-22-25), both Mr. McWhorter and his passenger were frisked and no weapons were found, (T12-7-9), and both Mr. McWhorter and the passenger were standing at the rear of Mr. McWhorter's car. (T12-11).

Comparing *Long* and the instant case, Mr. McWhorter was not observed committing a traffic violation while Long was, Mr. McWhorter was not under the influence of some intoxicant as Long was, Mr. McWhorter did not attempt to re-enter his vehicle as Long did, Mr. McWhorter did not run his car into a ditch as Long did, a weapon was not visible in Mr. McWhorter's car as it was in Long's, and finally, had the officers released Mr. McWhorter, he could have driven away, while Long could not.

Therefore, because there was no reasonable suspicion that their safety was in jeopardy the officers unconstitutionally exceeded the bounds of Long. The information available to them at the time Officer Green conducted the wingspan search did not rise to the level identified by the Supreme Court as necessary for such a search. *Long*, 463 U.S. at 1050. Neither officer testified that they possessed an articulable and objectively reasonable belief that Mr. McWhorter was potentially dangerous. *Long*, 463 U.S. at 1032. Therefore, the Report and Recommendation should have found that the wingspan search did not pass constitutional muster.

As a result, the subsequent discovery of the alleged seeds and particles of marijuana in the red backpack as well as the items discovered through the drug dog search must be suppressed as "fruit of the poisonous tree." *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

## **CONCLUSION**

Under the exclusionary rule, evidence obtained in an encounter that is in violation of the Fourth Amendment, including the direct products of police misconduct and evidence derived from the illegal conduct, or "fruit of the poisonous tree," cannot be used in a criminal trial against the victim of the illegal search and seizure. *United States v. Terzado-Madruga*, 897 F.2d 1099, 1112 (11th Cir. 1990). *See also Weeks v. United States*, 232 U.S. 383, 391-93 (1914).

Because there was no Fourth Amendment justification for the wingspan search of Mr. McWhorter or his vehicle, any and all evidence, physical or otherwise, information or statements obtained as a result of his unlawful detention and the subsequent search of his vehicle must be suppressed.

**WHEREFORE,** Mr. McWhorter asks this Court enter an order suppressing all evidence

(statements and items) seized from Mr. McWhorter following the stop of his vehicle on or about May 2, 2008. Additionally, any and all statements obtained as a result of the unlawful seizure are "fruit of the poisonous tree" and are due to be suppressed as well. *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). This evidence includes, but is not limited to:

(a) any and all physical evidence seized from the vehicle or Mr. McWhorter's person;

(b) any and all statements made by Mr. McWhorter during or after any stop, search or seizure of the vehicle and/or after Mr. McWhorter's arrest; and

(c) any and all evidence obtained as a result or "fruit" of any such seizures.

Dated this 1st day of May 2008.

Respectfully submitted,

s/ Michael J. Petersen
MICHAEL J. PETERSEN
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: michael_petersen@fd.org
ASB-5072-E48M

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 2:08-CR-0006-MEF |
| | ) | |
| JEREMY C. MCWHORTER | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Matthew Shepherd, Esq., Assistant U.S. Attorney, 131 Clayton Street, Montgomery, AL 36101.

Respectfully submitted,

s/ Michael J. Petersen
MICHAEL J. PETERSEN
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: michael_petersen@fd.org
ASB-5072-E48M